UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HENRY HARPER,

               Petitioner,

            -against-

BRIAN FISCHER, Superintendent,
Sing Sing Correctional Facility,

               Respondent.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV-06-485 (NGG) (JMA)

A P P E A R A N C E S :

     Henry Harper
     00 A 6249
     Fishkill Correctional Facility
     P.O. Box 1245
     Beacon, NY 12508
     *Pro Se Petitioner*

     Andrew Cuomo
     Attorney General of the State of New York
     By:    Luke Martland and Ashlyn H. Dannelly
              Assistant Attorneys General
     120 Broadway, 22nd Floor
     New York, NY 10271
     *Attorneys for Respondent*

**AZRACK, United States Magistrate Judge:**

     By Order dated October 24, 2006, the Honorable Nicholas G. Garaufis referred Henry

Harper's petition for a writ of habeas corpus to me for a report and recommendation pursuant to 28

U.S.C. § 636(b). Petitioner, proceeding pro se, brings this application pursuant to 28 U.S.C. § 2254,

challenging his conviction by a jury in New York Supreme Court, Queens County, for charges of

robbery in the second degree and grand larceny in the fourth degree. Petitioner was sentenced as a second violent felony offender to a determinate term of fifteen years imprisonment for the second degree robbery conviction, and an indeterminate term of two to four years imprisonment for the fourth degree larceny conviction. He is currently incarcerated at Fishkill Correctional Facility. In this habeas petition, petitioner alleges that he is being held in state custody in violation of his federal constitutional rights. For the reasons contained herein, I respectfully recommend that petitioner's application for a writ of habeas corpus be denied.

## I. BACKGROUND

### A. The Robbery

On the night of September 1, 1999, petitioner approached Sunny Mueller as she walked home near Main Street and 84th Road in Queens, New York. (Trial Tr. ("Tr.") 448:15-18.) As Mueller walked past, petitioner grabbed her purse, breaking one of its straps. (Tr. 449:20-22.) Mueller held tightly onto the bag, until petitioner yanked the purse hard and Mueller fell onto the ground. (Tr. 449:23-450:2.) Petitioner then dragged Mueller on her knee, wrested the bag free, and ran away with the purse. (Tr. 450:3-8.) During the robbery, Mueller's view of petitioner was "an arm's length away," and petitioner was not wearing a mask. (Tr. 453:11-454:2.)

Salvatore Tarantola was driving in the area, and heard a woman screaming that her purse had been stolen. (Tr. 355:19-356:20.) Immediately after he heard the screams, Tarantola saw a man run towards him with an object in his arms and then enter the passenger side of a parked car. (Tr. 356:22-357:12.) Tarantola pulled up in front of the car in an attempt to stop it from proceeding forward, but the car drove away. (Tr. 357:15-17, 358:1-2.) Tarantola observed that the car was small, foreign-made and "cream-greyish colored," with a Delaware license plate. (Tr. 358:9-25,

359:1.)

New York City Police Officer Joseph Mesita responded to a radio call of the robbery, and took Mueller's statement at the scene. (Tr. 425:12-19.) Mueller described petitioner as a 28 year old black male, 5'11", of "stocky build," weighing 200 pounds, with black hair in a "short cropped afro," brown eyes, and wearing a navy tank top and dark mesh shorts. (Tr. 428:18-430:12.) At the scene, Tarantola told Officer Mesita that the first numbers of the getaway car's license plate were "917" and the last numbers were either "365" or "635" (Tr. 430:17-431:3.)

New York City Police Detective Paul Heider was assigned to investigate the robbery. (Tr. 376:3-6.) Two weeks later, on September 15, 1999, Detective Heider observed a small, grey car with a Delaware license plate numbered "917-565." (Tr. 378:16-379:2.) Heider pulled the car over and found Joseph Berry driving the car, and petitioner sitting in the passenger's seat. (Tr. 380:4-24.) Berry and petitioner were handcuffed and taken to the 109th precinct. (Tr. 381:5-9.) While taking petitioner's pedigree information, Heider found that petitioner was 5'11", weighed 240 pounds, and had short black hair. (Tr. 382:22-25, 383:1-5.)

The next day, September 16, 1999, Detective Heider assembled a lineup with petitioner and five lineup fillers. (Tr. 383:18-22.) At his own request, petitioner sat in the number six position on the lineup. (Tr. 387:5-12.) The lineup lasted two minutes, from 4:54 to 4:56 pm, and Mueller identified petitioner as her attacker. (Tr. 418:1-2.) Petitioner was indicted on charges of robbery in the second degree, robbery in the third degree, and grand larceny in the fourth degree.

## B. The Suppression Hearing

Prior to trial, petitioner moved to suppress Mueller's identification arguing that the lineup was unduly suggestive and stemmed from his unlawful arrest. (Ashlyn Dannelly Decl. in Opp. to

Petition for Habeas Corpus ("Dannelly Decl."), Ex. A: Denial of Pre-trial Motion to Suppress.)  On

December 3 and 21, at the hearing on the admissibility of the identification testimony, Detective

Heider testified as to petitioner's arrest and the post-arrest line up.  (Id.)  Heider stated that before

he stopped the car in which petitioner was riding, he was investigating two other robberies that had

recently occurred in that area, both involving cars with license plates that were substantially similar

to the license plate of the car in which petitioner was riding.  (Id.)  In one robbery, the license plate

of the car involved was described as "917-565," while in the second robbery, the license plate

involved was described as a Delaware plate with either "917-635" or "917-365."  (Id.)  Heider

testified that Havida Drummond, the victim of a robbery that had taken place one hour earlier, came

to the scene and identified petitioner as the perpetrator.  (Id.)  At that point, Heider stated, he placed

petitioner under arrest.  (Id.)  Heider also testified that the post-arrest line-up conducted on

September 16, 2007 at the 109th precinct was conducted with adequate procedural safeguards.

Heider stated that Sunny Mueller came to the precinct, was kept apart from petitioner and the fillers

before the line-up, and immediately identified petitioner during the line-up.  (Id.)

Petitioner's motions were denied, with the court finding that the prosecution had presented

sufficient probable cause for the arrest of petitioner, and that the lineup had not been unduly

suggestive.  (Id.)

## C. The **Sandoval** Hearing

Thereafter, on June 28, 2000, a Sandoval hearing was held regarding petitioner's prior arrests

and convictions.[1]  During this hearing, the prosecutor informed the court that it wished to cross-

---

[1] In People v. Sandoval, 314 N.E.2d 413 (N.Y. 1974), the Court of Appeals of New York
held that a trial court, in the exercise of sound discretion, "may . . . make an advance ruling as to
the use by the prosecution of prior convictions or proof of the prior commission of specific

examine petitioner on prior arrests, specifically: (1) a June 1984 felony conviction; (2) January 1988 and April 1988 convictions for car-related theft; (3) a June 1991 felony for which petitioner pled guilty to stealing a car, running a stop sign, and striking a school bus, injuring the bus driver and a child; (4) two July 1991 convictions involving the stealing of two cars; (5) an August 1991 arrest for criminal possession of stolen property, to which petitioner pled guilty to a class E felony; and (6) a November 1991 arrest to which petitioner pled guilty to second degree robbery, in which he had thrown a woman to the ground while taking her purse. (Tr. 6:9-11:8.)

During the hearing, the prosecutor also referred to a post-arrest written statement made by petitioner as follows:

> Furthermore, if your Honor is interested, I have a written statement made by the defendant to Detective Heider, who is the arresting officer in this case, in which the defendant states that they were basically driving around and looking for some woman to hit or snatch her purse and eventually while Mr. Harper was driving, his buddy jumped out, knocked a woman from behind, took off with her purse, and rifled through it for the money, leaving the purse behind. (Tr. 9:23-10:8.)

Although mentioned at the <u>Sandoval</u> hearing, this statement was not ruled on by the Court, and was neither offered nor mentioned by the prosecution at trial.

Petitioner's counsel argued that the prosecutor should not be permitted to use the June 1984, June 1988, April 1988, July 1991, August 1991 and September 1992 convictions because they were too remote in time from the crime being tried. (Tr. 11:11-15:8.) He also contended that the theft-related convictions were too similar to the crime to which petitioner had been charged, and would

criminal, vicious or immoral acts to impeach a defendant's credibility." <u>Id.</u> at 416. The <u>Sandoval</u> Court instructed that this inquiry may, when appropriate, be addressed at a pre-trial evidentiary hearing. <u>Id.</u>

thus cause undue prejudice to petitioner. (Id.)

Justice Rios ruled that if petitioner took the stand at trial, the prosecutor could only cross-examine him on the June 1991 grand larceny arrest and conviction. (Tr. 41:1-4.) The court ruled that the prosecution could not, however, "go into the injuries or resisting arrest," but that he could "go as far as saying he operated the stolen car and crashed into another vehicle without mentioning school bus, school children, injuries and/or resisting arrest." (Tr. 41:5-8.) Regarding the June 1984 conviction, the court ruled that the petitioner could be asked if he had been convicted of a felony on that date, but could not be questioned about the substance of the conviction. (Tr. 41:10-21.) The court barred use of the remaining convictions.

**D. The Trial**

Immediately following the Sandoval hearing, petitioner's jury trial commenced with Justice Rios presiding. The first prosecution witness was Salvatore Tarantola, who testified to his observations on the night of the crime. (Tr. 353:13-373:22.) Detective Heider was the second prosecution witness. On cross-examination, petitioner's lawyer asked Heider: "Did you ask Mr. Berry if [his] car had been loaned out during the two weeks prior to him being arrested?" (Tr. 409:25-410:3.) Heider answered "Yes." (Tr. 410:3.) Defense counsel asked no further questions on this subject. (Tr. 410:3.) On redirect, the prosecutor asked Heider how Berry had responded when Heider asked him if he loaned his car. (Tr. 414:10-19.) Petitioner's counsel objected, but the court answered: "No, you asked a question. He's entitled to get the answer. Overruled." (Tr. 414:20-25.) The prosecutor then asked "Do you remember how Joseph Berry responded when you asked him at the scene of the arrest: "Have you loaned the car out in the past two weeks?" (Tr. 415:10-12.) Heider answered: "He told me he doesn't lend the car out to anybody. He's the only one that uses

the car, drives the car." (Tr. 414:13-15)

Police Officer Joseph Mesita, who responded to Mueller's complaint, was the fourth witness. (Tr. 423:14-425:16.) The final witness was Sunny Mueller, the victim of the crime, who testified at trial that "there was no doubt in [her] mind" that petitioner was the robber. (Tr. 463:17.) The victim stated that during the robbery, she was able to view petitioner from "an arm's length away," and he was close to her as they "played tug of war with [her] purse." (Tr. 453:7-14.) After the prosecution rested, defense counsel moved for dismissal, arguing that Mueller's identification was insufficient for a finding of guilt. (Tr. 486: 4-7.) This motion was denied. (Tr. 488:14-23.)

## E. Conviction and Sentencing

Petitioner was convicted of robbery in the second degree, N.Y. PENAL LAW § 160.10(2)(a) (McKinney 1999), and grand larceny in the fourth degree, N.Y. PENAL LAW § 155.30(5) (McKinney 1999). At sentencing, on September 11, 2000, petitioner's counsel moved to set aside the verdict, and the court denied the motion. (Sentencing Tr. 2:25-5:22.) The court then considered petitioner's pro se motion to vacate the judgment and denied this as well. (Sentencing Tr. 5:23-7:5.) The court declined to sentence petitioner as a persistent felony offender, but adjudicated him a second violent felony offender. (Sentencing Tr. 7:6-10:10.) Petitioner received a determinate term of fifteen years for the second-degree robbery conviction and a concurrent, indeterminate term of two to four years imprisonment for the fourth-degree grand larceny conviction. (Sentencing Tr. 24:4-15.)

## F. Petitioner's CPL § 440.10 Motion to Vacate

On February 24, 2004, prior to his direct appeal to the Appellate Division, petitioner filed a pro se motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 (2005). Petitioner claimed that his trial counsel's assistance was constitutionally ineffective because counsel

failed to (1) obtain an investigator that would attack the identification testimony admitted at trial and challenge conflicting police reports; (2) object to the suppression hearing findings; and (3) establish a record regarding Detective Heider's involvement in a previous civil rights case brought by petitioner. (Dannelly Decl., Ex A: Motion to Vacate.)

Justice Rios denied petitioner's motion to vacate on June 9, 2004, finding that "the defendant's claims are either procedurally barred or without merit." (Dannelly Decl., Ex D: Denial of Motion to Vacate at 1.) The court found that petitioner's claim that trial counsel was ineffective for failing to secure a private investigator was supported only by his conclusory, self-serving affidavit. (Id.) Furthermore, Justice Rios held, even if the claim were true, "that fact would not entitle the defendant to the relief he seeks, as he has failed to establish any prejudice arising therefrom." (Id.) Justice Rios then outlined the prosecution's case against the defendant, including the eyewitness' viewing of the aftermath of the crime and the getaway car's license plate, and the victim's identification of petitioner in a line-up. As to the discrepancies in the police reports that petitioner claimed should have been investigated, the court found they were "insubstantial, and, in any event, arise exclusively from the pattern robberies which were not charged; thus they would have been both irrelevant and prejudicial in the instant matter." (Id. at 2.) The court also found that trial counsel had "aggressively pursued a trial strategy of misidentification by the complainant." (Id. at 2.)

As to counsel's "remaining claims, including asserted failure to establish a record regarding [petitioner's] pending civil suit against Detective Heider," the court found that "sufficient facts appear on the record of the proceedings for the Appellate Division to adequately review the issues upon the defendant's pending appeal should he add the claims to those heretofore asserted; thus [the]

court is procedurally barred from determining them" in a § 440.10 motion. (Id. at 3.) "Were the court, nevertheless, to address the claims, it would find that defense counsel provided meaningful representation throughout these proceedings." (Id.)

Petitioner applied to the New York Appellate Division for leave to appeal the denial of his § 440.10 motion on July 9, 2004. (Dannelly Decl., Ex E: Notice of Application to Appellate Division, at 1.) This application was denied by the Appellate Division on August 31, 2005. (Dannelly Decl., Ex G: Decision and Order on Application, at 1.)

## G. Petitioner's Direct Appeal

On February 23, 2004, petitioner appealed his conviction to the Appellate Division, Second Department. Petitioner claimed that: (1) he was deprived a fair trial because the trial court's Sandoval ruling was erroneous; (2) during the Sandoval hearing, the prosecution's threat to introduce a post-arrest written statement attributable to petitioner violated due process and New York Criminal Procedural Law § 710.30;[2] (3) he was deprived a fair trial because he was denied the right to present evidence that the crime was committed by another; (4) the admitted statement of co-defendant Joseph Berry was irrelevant and prejudicial; (5) the introduction of Berry's statement violated petitioner's rights under the Confrontation Clause of the Sixth Amendment; (6) the trial court erroneously failed to instruct the jury on how to evaluate Berry's statements; (7) the trial court erroneously failed to instruct the jury that Berry's statements could not be used as evidence against

---

[2] New York Criminal Procedure Law § 710.30 requires the prosecution to give timely notice of their intention to use a defendant's statement against him. See N.Y. CRIM. PROC. LAW § 710.30(1) (McKinney 2006) ("Whenever the People intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.")

petitioner; and (8) the prosecutor's improper comments during summation on facts not in evidence warranted a reversal of conviction. (Dannelly Decl. Ex H: Brief for Defendant-Appellant.)

On October 5, 2004 the Appellate Division, Second Department, affirmed petitioner's conviction. People v. Harper, 783 N.Y.S.2d 291 (N.Y. App. Div. 2004). The Court ruled that the trial court's Sandoval ruling "constituted a provident exercise of discretion." Id. (citing People v. Sandoval, 314 N.E.2d 413 (N.Y. 1974); People v. Hegdal, 699 N.Y.S.2d 73 (N.Y. App. Div. 1999)). It went on to summarily dismiss petitioner's seven other claims as "unpreserved for appellate review and, in any event, [] without merit." Id.

On December 4, 2004, petitioner sought leave to appeal to the Court of Appeals of New York, raising the eight issues he had presented to the Appellate Division. On February 3, 2005, the Court of Appeals denied leave to appeal without a published opinion. People v. Harper, 4 N.Y.S.2d 174 (N.Y. 2005).

**H. The Instant Habeas Petition**

On January 16, 2006, petitioner filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. (Dannelly Decl., Ex N: Petition for Writ of Habeas Corpus, at 2, 15.) Petitioner raises the same eight claims that he brought on direct appeal: (1) he was deprived a fair trial because the trial court's Sandoval ruling was erroneous; (2) during the Sandoval hearing, the prosecution's threat to introduce a post-arrest written statement attributable to petitioner violated due process and New York Criminal Procedural Law § 710.30; (3) he was deprived a fair trial because he was denied the right to present evidence that the crime was committed by another; (4) the admitted statement of co-defendant Joseph Berry was irrelevant and prejudicial; (5) the introduction of Berry's statement violated petitioner's rights under the

Confrontation Clause; (6) the trial court erroneously failed to instruct the jury on how to evaluate

Berry's statements; (7) the trial court erroneously failed to instruct the jury that Berry's statements

could not be used as evidence against petitioner; and (8) the prosecutor's improper comments during

summation on facts not in evidence warranted a reversal of conviction.

In a letter dated May 12, 2006, petitioner requested that the petition be stayed so that he

could exhaust unspecified claims in a pending application for a writ of error coram nobis in state

court. On July 24, 2006, petitioner submitted an affidavit setting forth the claim he intended to

exhaust and showing good cause for his failure to do so. In his affidavit, petitioner stated he wished

to exhaust a claim of ineffective assistance of appellate counsel, for counsel's failure to raise any

preserved or meritorious claims on direct appeal, notably ineffective assistance of trial counsel.

Petitioner's habeas petition and his motion to stay his habeas petition were referred to me by Judge

Garaufis for a report and recommendation on October 24, 2006.

Petitioner filed his writ of error coram nobis in state court, presenting his ineffective

assistance of appellate counsel claim for review.[3]   (See Pet'r Memo. in Supp. of Motion to Stay

"Pet'r Memo.") The Appellate Division denied petitioner's writ on September 19, 2006, finding that

petitioner "failed to establish that he was denied ineffective assistance of appellate counsel." See

People v. Harper, 32 A.D.3d 967 (N.Y. App. Div. 2006).

Petitioner later asked the New York Court of Appeals for leave to appeal the denial of his

_____

[3] By order dated July 3, 2007, I directed both parties to brief whether (1) petitioner's ineffective assistance of trial counsel claim had been exhausted in state court and (2) whether petitioner's habeas should be granted on the grounds that petitioner received ineffective assistance of appellate counsel. In response to this order, petitioner submitted a supplemental brief clarifying that in his writ of error coram nobis, he only raised an ineffective assistance of appellate counsel claim. Thus, an ineffective assistance of trial counsel claim was not exhausted in his coram nobis. (Pet'r Supp. Brief at 1.)

coram nobis, and this was denied on February 1, 2007. <u>People v. Harper</u>, 8 N.Y.3d 881, 832 N.Y.S.2d 493 (N.Y. 2007). Petitioner thus exhausted his ineffective assistance of appellate counsel claim in state court, and so an order issuing a stay of his habeas petition is rendered moot.

In sum, I will review and make recommendations on nine claims in total: the eight claims petitioner included in his original habeas corpus petition, and the ineffective assistance of appellate counsel claim, added to the habeas petition after it was exhausted in state court.

## II. DISCUSSION

### A. The Antiterrorism and Effective Death Penalty Act

Harper's petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 (1996). Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 313 (2d Cir. 2001) (quoting <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Pursuant to the "unreasonable

application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Using this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

"[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." Overton v. Newton, 295 F.3d 270, 278 (2d Cir. 2002); see also Yung v. Walker, 341 F.3d 104, 111 (2d Cir. 2003) (amended opinion) (district court's habeas decision that relied on precedent from the Court of Appeals remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Second Circuit has also indicated that habeas relief may be granted if a state court decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. Torres v. Berbary, 340 F.3d 63, 72 (2d Cir. 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Before considering whether the state court's application of federal law was unreasonable, however, I must determine whether petitioner has surmounted the various procedural

hurdles established under AEDPA, the first of which is whether his petition was timely filed.

**B. Timeliness**

Under AEDPA, a petitioner must file an application for a writ of habeas corpus in federal court within one year of the date on which the petitioner's state court conviction became final. See 28 U.S.C. § 2244(d)(1). Petitioner's conviction became final on May 4, 2005, the date on which his time to seek a writ of certiorari from the United States Supreme Court expired. See McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citing Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.")). Petitioner had one year, or until May 4, 2006, to file his application for a writ of habeas corpus. He filed his application on January 16, 2006, and therefore it is timely.

**C. Procedural Bar**

Although the habeas petition in this case was timely filed, seven of petitioner's habeas claims are "procedurally defaulted." A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to a state court decision resting on an independent and adequate state procedural rule. Coleman v. Thompson, 501 U.S. 722, 730 (1991). An independent and adequate state procedural ruling may only be found where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (citation and internal quotation marks omitted). This rule applies even where a state court finds the claims procedurally barred, and then reaches the merits of a petitioner's claim in the alternative. See Harris, 489 at 264 n. 10 ("a state court need not fear reaching the merits of a petitioner's claim in the alternative."). For example,

where a state court says that a claim is "not preserved for appellate review," and then rules "in any event" on the merits, such a claim is not preserved. Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990.)

In addition, both the Supreme Court and the Second Circuit have held that a failure to contemporaneously object is an adequate and independent state ground, and bars federal review. See Wainwright v. Sykes, 433 U.S. 72, 86 (1977); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). This contemporaneous objection rule recognizes that a state has a strong interest in requiring parties to bring "any matter which a party wishes the appellate court to decide . . . to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error." Rolling v. Fischer, 433 F. Supp. 2d 336, 346 (S.D.N.Y. 2006) (citing People v. Luperson, 85 N.Y.2d 71, 78 (N.Y. 1995)).

In this case, petitioner first raised eight claims on direct appeal: (1) he was deprived a fair trial because the trial court's Sandoval ruling was erroneous; (2) during the Sandoval hearing, the prosecution's threat to introduce a post-arrest written statement attributable to petitioner violated due process and New York Criminal Procedural Law § 710.30; (3) he was deprived a fair trial because he was denied the right to present evidence that the crime was committed by another; (4) the admitted statement of co-defendant Joseph Berry was irrelevant and prejudicial; (5) the introduction of Berry's statement violated petitioner's rights under the Confrontation Clause; (6) the trial court erroneously failed to instruct the jury on how to evaluate Berry's statements; (7) the trial court erroneously failed to instruct the jury that Berry's statements could not be used as evidence against petitioner; and (8) the prosecutor's improper comments during summation on facts not in evidence warranted a reversal of conviction. His ineffective assistance of appellate counsel claim was brought

before the Appellate Division in a writ of error coram nobis.

Two of petitioner's claims were adjudicated on the merits, and so they are not procedurally defaulted. Petitioner's ineffective assistance of appellate counsel claim, raised in petitioner's writ of error corum nobis, was adjudicated on the merits: the Appellate Division denied his writ by stating that "appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Harper, 32 A.D.3d 967, 967 (N.Y. App. Div. 2006) (citing Jones v. Barnes, 463 U.S. 745 (1983); People v. Stultz, 2 N.Y.3d 277 (N.Y. 2004)). In addition, petitioner's claim that the trial court's Sandoval ruling was in error was also adjudicated on the merits: the Appellate Division rejected petitioner's claim by stating that "the trial court's Sandoval ruling constituted a provident exercise of discretion." Harper, 11 A.D.3d at 711(internet citations omitted).

As to the seven other claims raised on direct appeal, the Appellate Division's decision was rendered in one sentence, stating that "[t]he defendant's remaining contentions are unpreserved for appellate review and, in any event, are without merit." Id. Thus, these claims are not preserved. See Glenn, 98 F.3d at 724-25. In addition, a review of the trial record and the appellate briefs demonstrates that trial counsel did not object to six of the seven alleged errors at trial, a requirement under New York's contemporaneous objection rule. See C.P.L. § 470.50. For these reasons, these seven claims are procedurally barred from being considered by this Court. See Fama, 235 F.3d at 804; Garcia v. Lewis, 188 F.3d at 79.

Although the procedural default of these seven claims would normally bar federal habeas review, the Supreme Court has held that this default can be overcome by a showing of "cause and prejudice," or by demonstrating that failure to consider the claim will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 488 (1986). A fundamental miscarriage

of justice can be shown through "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324-27 (1995). A petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup, 513 U.S. at 327. However, the Supreme Court has emphasized that this exception must be "'rare' and be applied only in the 'extraordinary case.'" Id. at 299. In this case, petitioner has not offered any evidence to suggest that he will suffer a fundamental miscarriage of justice if his claims are not heard.

Petitioner claims that he satisfies the cause requirement because his trial counsel rendered ineffective assistance by failing to object to these errors at trial. Indeed, the Supreme Court has found that "[i]neffective assistance of counsel . . . is cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner's ineffective assistance of trial counsel claim will be addressed in my discussion of the merits of his ineffective assistance of appellate counsel claim. In my analysis, I find that petitioner does not demonstrate that he was provided ineffective assistance of trial counsel. See supra, Part II E. Thus, he has not shown cause for his procedural default. Accordingly, seven of petitioner's claims raised in his direct appeal cannot be reviewed by this court. This leaves two claims to be considered under the AEDPA deferential standard, ibid.: (1) the trial court's Sandoval ruling was in error and (2) petitioner was denied effective assistance of appellate counsel.

### D. Exhaustion of State Remedies

Even if the two claims remaining were not procedurally defaulted, several of petitioner's claims, including that the Sandoval ruling was in error, were not exhausted in state court as required

under AEDPA, and thus cannot be reviewed by this Court. See 28 U.S.C. § 2254(b). Under AEDPA's exhaustion requirement, "an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, the petitioner must first "fairly present" his federal claim to the highest state court from which a decision can be rendered. See Daye v. Attorney Gen. of New York, 696 F.2d 186, 190-91 n. 3 (2d Cir. 1982) (en banc). More specifically, the petitioner must have informed the state court of "both the factual and the legal premises of the claim [asserted] in federal court," Daye, 696 F.2d at 191, and have referred to relevant federal constitutional provisions in his briefs submitted to the state courts. See Baldwin v. Reese, 541 U.S. 27, 33 (2004). "This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman, 501 U.S. at 731.

In petitioner's direct appeal, the following claims were raised before the Appellate Division solely on state law grounds: (1) the trial court's Sandoval ruling was in error (Dannelly Decl., Ex H: App. Brief at 24-27); (2) the admission of a co-defendant's post-arrest statement was irrelevant and prejudicial (App. Brief at 33); (3) the trial court erroneously failed to instruct the jury on how to evaluate the post-arrest statement of co-defendant Berry (Id. at 36); and (4) the trial court erroneously failed to instruct the jury that co-defendant Berry's post-arrest statement could not be used as evidence against petitioner. (Id. at 37-38.) Furthermore, petitioner's claim that the prosecution threatened to use his co-defendant's admission without proper notification under CPL § 710.30 is also not exhausted; courts in this Circuit have consistently held that a violation of CPL § 710.3 0 is

not cognizable on habeas review, because this is an issue of state law.  See Thomas v. Phillips, No. 04-CV-906, 2006 WL 39239, at *4, (E.D.N.Y. Jan. 5, 2006); Ventura v. Artuz, No. 99-CV-12025, 2000 WL 995497, at *12 (S.D.N.Y. July 19, 2000) (citing cases.)

Accordingly, these five claims were not exhausted in state court, and thus cannot be reviewed by this Court.  Most importantly, petitioner's claim that the trial court's Sandoval ruling was in error was not presented to the state appellate court in constitutional terms.  In sum, this leaves one claim for this Court to review: ineffective assistance of appellate counsel.

**E. Merits of Petitioner's Ineffective Assistance of Counsel Claim**

Petitioner's one remaining claim for habeas relief alleges that he was denied effective assistance of appellate counsel.  To prevail on an ineffective assistance of appellate counsel claim, petitioner must satisfy the two-part test set forth in Strickland v. Washington.  466 U.S. 668, 694 (1984); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1993) (applying Strickland to ineffective assistance of appellate counsel claims).  Pursuant to Strickland, petitioner must demonstrate that "his counsel's representation fell below an objective standard of reasonableness," measured under "prevailing professional norms."  Id. at 687-88.  He must also establish that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 692.  In applying this test, a reviewing court must be "highly deferential," and presume that counsel's conduct falls within the range of reasonable performance.  Id. at 689.  In addition, the law is clear that appellate counsel is not required to raise every non-frivolous argument on appeal.  Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  However, petitioner may establish ineffective assistance if he demonstrates that appellate counsel omitted significant and obvious issues while pursuing those that were clearly weaker.  Mayo, 13 F.3d at 533.

The Strickland standard is particularly onerous in a habeas proceeding, because petitioner must establish that the state court applied Strickland to his case in an objectively unreasonable manner. See Woodford v. Visciotti, 537 U.S. 19, 25 (2002). "It is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell v. Cone, 535 U.S. 685, 699 (2002). Petitioner must show that the state court's application of Strickland "involves some increment of incorrectness beyond error." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

In this case, petitioner contends that appellate counsel's representation was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. In his coram nobis, petitioner claimed that trial counsel's failure to object to "a laundry list of errors" denied him the right to a fair trial and the preservation of meritorious issues to be presented on appeal. (Writ of Error Coram Nobis ("Coram Nobis") 3-4, attached as exhibit to Pet'r Aff. in Supp. of Mot. to Stay.) He faulted appellate counsel for raising eight issues on appeal that were, as was confirmed by the Appellate Division, "unpreserved for appellate review, or without merit," while ignoring an ineffective assistance of trial counsel claim. (Coram Nobis 2-3.) Petitioner claimed that counsel should have instead filed an Anders brief,[4] which he contends would have allowed him to file a pro se supplemental brief in the Appellate Division. (Id.) Petitioner also noted that appellate counsel was aware that his § 440.10 motion included an ineffective assistance of trial counsel claim, yet did not bring the claim on direct appeal. (Coram Nobis 20.) Nevertheless, the Appellate Division

---

[4]Pursuant to Anders v. California, an attorney who believe that his or her client's appeal would be frivolous is required to file a brief requesting withdrawal but referring anything in the record that might arguably support an appeal. See Campusano v. United States, 442 F.3d 770, 774 (2d Cir. 2006) (citing Anders v. California, 386 U.S. 738, 744 (1967).

denied petitioner's coram nobis, finding that he "failed to establish that he was denied ineffective assistance of appellate counsel." See People v. Harper, 32 A.D.3d 967, 820 N.Y.S.2d 815 (N.Y. App. Div. 2006).

Under AEDPA, the fundamental question before this Court is whether the Appellate Division's decision to reject petitioner's ineffective assistance of appellate counsel claim "was contrary to, or involved an unreasonable application of clearly established federal law." See 28 U.S.C. § 2254(d). More specifically, I must determine whether the state court's application of Strickland was unreasonable. After a careful review of the record, I find that the state court properly held that petitioner failed to establish ineffective assistance of appellate counsel. Petitioner cannot establish that his trial counsel was ineffective, and thus appellate counsel cannot be faulted for failing to raise this unmeritorious claim on appeal. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ([f]ailure to make a meritless argument does not amount to ineffective assistance").

**1. Trial Counsel Was Not Ineffective**

Petitioner claims that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct appeal. However, appellate counsel was not ineffective for failing to raise this claim, because an ineffective assistance of trial counsel claim would have had no merit.

First, it is clear from the record that trial counsel provided petitioner with effective representation. Trial counsel moved to suppress the identification testimony, and vigorously cross-examined witnesses during the suppression hearing. (Dannelly Decl., Ex. A: Denial of Pre-trial Mot. to Suppress.) Trial counsel also successfully participated in a Sandoval hearing in which he obtained a ruling that substantially limited the extent to which the prosecution could use petitioner's numerous

previous convictions. (Tr. 6:9-11:8.) Counsel gave a cogent opening statement, aggressively cross-examined the prosecution's witnesses, objected at trial in numerous instances, and gave a persuasive summation. (Tr. 347:1-531:14.) Trial counsel's strategy highlighted differences in the victim's description of petitioner and his actual characteristics, and argued that this created a reasonable doubt as to defendant's guilt. Finally, counsel moved for dismissal at the end of the trial, and at sentencing made a motion to set aside the verdict. (Tr. 486:4-488:1; Sentencing Tr. 2:1-10:25.)

Second, none of trial counsel's alleged failures were objectively unreasonable under Strickland.[5] I will address each of the errors that petitioner claims trial counsel committed in turn.

Petitioner claims that trial counsel erred in failing to object to the prosecution's Brady and Rosario violations. (Coram Nobis 10.) During the Sandoval hearing, the prosecution alluded to a post-arrest statement by petitioner, in which he allegedly admitted to being involved in an earlier purse snatch robbery. (See Tr. 9:23-10:8.) Petitioner claims that he was not provided prior notice of this statement, and faults his trial counsel for failing to "have the People honor their 'Rosario' and 'Brady' obligation(s)." (Coram Nobis 10.) However, no violations of Rosario or Brady occurred. Under People v. Rosario, a defendant is entitled to examine a prior statement of a witness called by the prosecution. 9 N.Y.2d 286 (N.Y. 1961). Here, the prior statement was made by the defendant, not a prosecution witness; thus, Rosario does not apply. Brady v. Maryland, requires the prosecution to provide any exculpatory material to the defendant where the evidence is material to guilt or

_____

[5] In petitioner's coram nobis, in which he exhausted his ineffective assistance of appellate counsel claim, he puts forth several arguments as to why he believes trial counsel was ineffective. As the habeas court, I may only consider those arguments that were exhausted in state court. See 28 U.S.C. § 2254(b). I will therefore only address the ineffective assistance of trial counsel arguments that petitioner included in his coram nobis, despite the fact that petitioner included other ineffective assistance of trial counsel arguments in his § 440.10 petition to the New York courts.

punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  This was not an exculpatory statement, but an inculpatory statement, and so there was no Brady violation.

It appears that in his coram nobis, petitioner confused the Brady and Rosario disclosure requirements with those of New York Criminal Procedure Law § 710.30.  See N.Y. CRIM. PROC. LAW § 710.30(1).  In fact, in every other filing petitioner made before this Court and others, he refers to § 710.30 when discussing his post-arrest statement.  (See Dannelly Decl. Ex H: Brief for Defendant-Appellant at 27; Danelly Decl. Ex K: Leave to Appeal Letter at 3; Dannelly Decl. Ex N: Habeas Corpus at 3, 7.)  Yet, even if petitioner had raised a § 710.30 claim in his coram nobis, it would have failed.  Section 710.30 requires the prosecution to give timely notice to a defendant if they intend to use his statement against him at trial, with the consequence of this failure being the exclusion of the statement at trial.  See N.Y. CRIM. PROC. LAW § 710.30(1).  Although mentioned at the Sandoval hearing, the prosecution never sought to admit or use this statement in any fashion.  Thus, there was no violation of the statute.

Petitioner also faults counsel for failing to object when the trial court denied him what he calls "the right to present a viable defense."  (Coram Nobis 11-12.)  This claim, too, is without merit.  The evidence petitioner wished to introduce consisted of victim statements and police reports from a string of burglaries not charged in his case.  Petitioner claimed that the victims in these robberies had viewed him in various line-ups, and none of them had identified him has the perpetrator of the crime.  (Coram Nobis 11.)  However, it would have been irrelevant and prejudicial for trial counsel to offer evidence that petitioner's description did not match the complaint reports of other robberies.  Thus, trial counsel was not ineffective for failing to object to the court's denial.

Petitioner next claims that trial counsel provided ineffective assistance when he opened the

door to incriminating evidence regarding Joseph Berry's statement to Detective Heider. (Coram Nobis at 14.)  More specifically, defense counsel's cross-examination of Detective Heider allowed the prosecution to elicit testimony on redirect that Berry did not lend his car to another person before the robbery.   Although defense counsel's question to Detective Heider — "Did you ask Mr. Berry if that car had been loaned out during the two weeks prior to him being arrested?" — was of questionable probative value, the testimony elicited on redirect — "He told me that he doesn't lend the car out to anybody" — was not devastating.  Berry's statement did not establish that petitioner had irrefutably participated in the robbery, but rather that Berry was the only driver at that time. Even if trial counsel did err with this one poorly worded question, this does not cause counsel's representation to fall outside of the wide range of what is considered "reasonable" under Strickland.

Petitioner further contends that trial counsel erred in failing to request a limiting instruction regarding Berry's statement to Detective Heider. (Coram Nobis 13.)  However, no such instruction was necessary as the trial court properly admitted this testimony without limitation.  At trial, defense counsel opened the door when he asked Detective Heider: "Did you ask Mr. Berry if that car had been loaned out during the two weeks prior to him being arrested?"  (Tr. 409:25-410:2.)  As an opposing party, the prosecution was permitted to ask a related question on cross-examination. People v. Peoples, 143 A.D.2d 780, 781 (N.Y. App. Div. 1988) ("When the opposing party opens the door on cross-examination 'to matters not touched upon during the direct examination, a party has the right on redirect' to explain, clarify and fully elicit [the] question only partially examined' on cross-examination.") (citing People v. Melendez, 55 N.Y.2d 445 (N.Y. 1982)).  Thus, no instruction was required.

Lastly, petitioner argues that trial counsel's failure to object to the court's Sandoval ruling

was error, and thus rendered trial counsel ineffective. (Coram Nobis at 23.) The trial court held that if petitioner took the stand at trial, he could be cross-examined on his June 1991 grand larceny arrest and conviction, but there could be no mention of injuries to the bus driver and child, or of petitioner's resisting arrest. (Tr. 41:1-4.) The court also ruled that the prosecutor could ask petitioner if he had been convicted of a separate felony on June 1984, but could not inquire as to the substance of the conviction. (Tr. 41:10-21.) Trial counsel did not err in failing to object, as this was not error: the trial court appropriately balanced the probative value and the prejudice to the defendant as is required by the Sandoval decision, and limited prosecutorial questioning accordingly. See People v. Sandoval, 34 N.Y.2d 371, 375 (N.Y. 1974). Furthermore, petitioner did not testify at trial, and so this evidence was never introduced. Thus, trial counsel did not render ineffective assistance by failing to object.

### 2. Trial Counsel's Representation Did Not Prejudice Petitioner

As for the second prong of the Strickland analysis, petitioner was not prejudiced by trial counsel's alleged errors, particularly given the overwhelming evidence of his guilt. The State's case included an eyewitness to the robbery who provided a positive identification of the license plate of a car in which petitioner was riding. (Tr. 430:17-431:3.) In addition, the victim's description of the perpetrator at the scene of the crime matched petitioner. (See Tr. 428:18-430:12.) The victim, Sunny Mueller, testified at trial that she was able to view petitioner from "an arm's length away," and that he was close to her as she "played tug of war with [her] purse" during the robbery. (Tr. 453:7-14.) She positively and without hesitation identified petitioner in a line-up at the police station and later in court. (Tr. 462:13-18.) Given the strength of evidence, petitioner was not prejudiced by trial counsel's alleged errors.

In sum, because petitioner has not proven that his trial counsel was ineffective under Strickland, his ineffective assistance of appellate counsel claim was properly denied by the New York Appellate Division. Thus, the state court's decision was not contrary to, or involve an unreasonable application of, Strickland v. Washington. For this reason, I respectfully recommend his habeas petition be denied on petitioner's ineffective assistance of appellate counsel claim.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that petitioner's writ of habeas corpus be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: October 15, 2007
      Brooklyn, New York

                    /S/
                    JOAN M. AZRACK
                    UNITED STATES MAGISTRATE JUDGE